IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL SPALDING, et al.,

    Plaintiffs,

v.

CITY OF OAKLAND, et al.,

    Defendants.

NO. C11-2867 TEH

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

    This putative class action arises out of a mass arrest made on November 5, 2010, at a protest following the sentencing of Johannes Mehserle. After allegedly using police lines to confine the crowd in a small area on 6th Avenue between East 17th and 18th Streets in Oakland, the Oakland Police Department arrested approximately 150 people that night, including named Plaintiffs Daniel Spalding, Katharine Loncke, Danielle Lopez Green, and Adrian Drummond-Cole. Plaintiffs seek to represent a class of people who were arrested in that mass arrest and who were never charged with any crime related to the arrest. Defendants are the City of Oakland and several individual Oakland police officers ("City Defendants"), and the County of Alameda and the Alameda County Sheriff ("County Defendants").

    Plaintiffs now move for class certification. The County Defendants oppose the motion, but the City Defendants do not. After reviewing the parties' written arguments, the Court determined that the motion was suitable for resolution without oral argument and vacated the scheduled March 26, 2012 hearing date. For the reasons set forth below, the Court now GRANTS the motion and certifies the proposed class under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

**LEGAL STANDARD**

A party seeking to certify a class must demonstrate that it has met all four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). Rule 23(a) allows a class to be certified only if:

>  (1) the class is so numerous that joinder of all members is impracticable;
>
>  (2) there are questions of law or fact common to the class;
>
>  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for the maintenance of three types of class actions. Plaintiffs seek to certify the class under Rule 23(b)(3), which allows a class to be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[1] The factors a court should consider when evaluating these issues include the following:

>  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>  (D) the likely difficulties in managing a class action.

*Id.*

---

[1] Plaintiffs argue, in the alternative, that the class may also be certified under either Rule 23(b)(1) or 23(b)(2). Because the Court finds certification to be appropriate under Rule 23(b)(3), it does not reach these alternative arguments.

2

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The district court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements are satisfied. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Such analysis will often "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551. If a district court concludes that the moving party has met its burden, then the court has "broad discretion" to certify the class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

**DISCUSSION**

**I.   Rule 23(a)**

    **A.   Numerosity**

Rule 23 first requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011). The proposed class in this case consists of approximately 150 members, and the Court agrees with Plaintiffs' undisputed contention that joinder would be impracticable.

    **B.   Commonality**

Plaintiffs must also demonstrate commonality under Rule 23(a)(2), which "requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks and citation omitted). Plaintiffs's claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* For a civil rights claim,

3

1  commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that
2  affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.
3  2001). "[I]ndividual factual differences among the individual litigants or groups of litigants
4  will not preclude a finding of commonality." *Id.*

5      Plaintiffs contend that the putative class was subjected to the following common
6  course of conduct following their arrest: detention by the County on the street and then in
7  buses and vans parked at the jail garage and loading dock for two to seven hours; denial of
8  access to toilets; restraint of their hands behind their backs with plastic handcuffs; overnight
9  detention at the jail in overcrowded holding cells that lacked beds or other sleeping
10 accommodations and adequate sanitation; deprivation of adequate food; and incarceration for
11 a total of twelve to twenty-four hours before being released without citation. Plaintiffs
12 further contend that all female arrestees were ordered to provide urine samples, which were
13 ostensibly to be used for pregnancy testing. They assert that these common facts give rise to
14 common legal questions concerning Plaintiffs' detention and conditions of confinement,
15 including whether the conditions violated the First, Fourth, or Fourteenth Amendments,
16 California Penal Code section 853.6, or California Civil Code sections 51.7 or 52.1.

17      These shared questions are more than sufficient to establish commonality. Plaintiffs
18 have alleged a common course of conduct that is amenable to classwide resolution. The
19 Court addresses the County Defendants' commonality arguments below, as they go more to
20 predominance rather than to the existence of questions common to the class.

21    **C.**    **Typicality**

22      Rule 23(a)(3) requires named class members' claims to be "reasonably co-extensive
23 with those of absent class members; they need not be substantially identical." *Hanlon v.*
24 *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other
25 members have the same or similar injury, whether the action is based on conduct which is not
26 unique to the named plaintiffs, and whether other class members have been injured by the
27 same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)
28 (internal quotation marks and citation omitted).

4

This test is satisfied here. Defendants argue that each plaintiff experienced an "individual set of circumstances that affected the length of their incarceration." Opp'n at 7. However, the differences they identify do not defeat typicality. For example, Defendants observe that three named plaintiffs were transported to the jail on buses, while one was transported on a van; that the four named plaintiffs spent varying amounts of time on the buses or van, from less than 1.5 hours to 4-5 hours; and that they were released between 2:00 PM and 6:30 PM the following day. These discrepancies do not indicate a material difference in the injuries alleged.

Defendants also argue that none of the named plaintiffs was forced to urinate while detained on the buses or vans, in contrast to the class allegation that many class members were forced to urinate on the floors of the buses, often through their clothing. Plaintiff Lopez Green subsequently filed a supplemental declaration indicating that, "[d]uring that period of time that I was waiting to go on the bus, I urinated in my pants." Lopez Green Suppl. Decl. ¶ 1. However, more to the point:

> If the asserted injury is the denial of access to a bathroom at a specific moment of need then the government is correct that the plaintiffs have not demonstrated a likelihood that other inmates have suffered similarly. If, on the other hand, the injury arises simply out of being housed in a facility in which bathroom access is unreliable, then all of the approximately 4,000 inmates housed in Building 4 during the subject period share the claim.

*Tyler v. Suffolk County*, 253 F.R.D. 8, 10 (D. Mass. 2008). The same holds true here, where Plaintiffs challenge the common conditions of their confinement, albeit on the street and in buses and vans, rather than in a facility. The fact that only one named plaintiff states that she urinated on herself, and before she boarded the bus rather than on the bus, does not render the named plaintiffs' claims atypical.

**D.  Adequacy**

The legal adequacy of the class representatives under Rule 23(a)(4) is determined by the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Defendants do not challenge the adequacy of either the named plaintiffs or their counsel. Based on its review of the record, the Court is satisfied that there are no conflicts of interest between the named plaintiffs and other class members and that counsel will prosecute the action vigorously. The Court has further considered the factors enumerated in Federal Rule of Civil Procedure 23(g) and finds that all six attorneys representing Plaintiffs will fairly and adequately represent the interests of the class.

## II.    Rule 23(b)(3)

Having found that Plaintiffs have satisfied all four requirements of Rule 23(a), the Court now turns to Rule 23(b)(3). Defendants have pointed to no difficulties in managing this case as a class action, and the Court has identified none upon its own consideration. *See* Fed. R. Civ. P. 23(a)(3)(D). Likewise, there appears to be no interest by class members to exert individual control over separate actions, no other litigation concerning the matters at issue in this case, and no reason not to concentrate the litigation in this forum. *See* Fed. R. Civ. P. 23(a)(3)(A)-(C).

The primary dispute in this case is whether common issues as to the County Defendants predominate over individualized issues. As noted above, the Court does not find the individual differences identified by Defendants to be material. The Court now finds that the common issues identified by Plaintiffs and listed above predominate over the individual factual differences identified by Defendants.

The County Defendants contend that individualized trials will be required to determine whether they detained Plaintiffs for an unreasonable period of time and whether they subjected Plaintiffs to unlawful conditions of confinement. This Court disagrees. *See MacNamara v. City of New York*, 275 F.R.D. 125, 148-54 (S.D.N.Y. 2011) (certifying under Rule 23(b)(3) classes based on excessive detention and conditions of confinement by the New York Police Department in connection with a series of arrests made during protests of the 2004 Republican National Convention); *see also Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003) (certifying under Rule 23(b)(2) a class based on the mass arrest of

6

approximately 400 individuals who, among other claims, asserted that they were "handcuffed and held on buses for up to 13 hours, and later detained at the Police Academy Gymnasium for periods ranging from 18 to 36 hours with one wrist cuffed to the opposite ankle"). This action raises questions about the County (and City) Defendants' common treatment of members of the proposed class. For example, did the County Defendants detain Plaintiffs on buses and vans for several hours without access to toilets or attention to asserted medical needs? Did they ever intend to hold Plaintiffs for a probable cause determination or was it always their intent only to cite and release? Did they require urine samples from all female protestors? Did they detain Plaintiffs in holding cells with no sleeping space and inadequate sanitation? Did they fail to provide adequate food to Plaintiffs? If Defendants did any of these actions, did they violate Plaintiffs' constitutional or statutory rights? The parties disagree on the relevant legal standards – e.g., whether the presumptively valid 48-hour period between arrest and a probable cause hearing discussed in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), applies to this case, and whether the conditions of confinement are governed by the Fourth or Eighth Amendments – but determining which standards to apply also presents common legal questions that would be appropriate to resolve on a classwide basis. These issues predominate over individualized issues, such as how long each class member spent on a bus or van, and what time on the following day they were released. The Court therefore finds it appropriate to certify the proposed class under Rule 23(b)(3).

If this case proceeds to trial, the Court will discuss with the parties whether liability and damages should be bifurcated, as well as how damages should be determined. It notes, however, that Plaintiffs assert that, "[i]n this case, the class members' damages are unusually uniform." Mot. at 22.

**CONCLUSION**

For the reasons set forth above, as well as the City Defendants' non-opposition, the following class is hereby certified: The approximately 150 people who were arrested in the

7

mass arrest on 6th Avenue between East 17th and 18th Streets in Oakland on November 5, 2010, and who were never charged with any crime related to this arrest.  Plaintiffs Daniel Spalding, Katharine Loncke, Danielle Lopez Green, and Adrian Drummond-Cole are appointed as class representatives.  The following counsel are appointed as class counsel: Rachel Lederman, Carol Sobel, Bobbie Stein, R. Michael Flynn, Mara Verheyden-Hilliard, and Carl Messineo.  Although the Court grants Plaintiffs' request to have six attorneys appointed as class counsel, it cautions counsel to avoid duplicative work and to minimize staffing inefficiencies.

Because the Court has certified a class pursuant to Federal Rule of Civil Procedure 23(b)(3), it must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The parties shall meet and confer and attempt to reach agreement on an adequate form and procedure for class notice.  They shall file a stipulation and proposed order on or before **April 27, 2012,** or, if agreement is not reached by that date, shall include an update in their joint case management conference statement due on **April 30, 2012.**

**IT IS SO ORDERED.**

Dated: 03/23/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT